**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Martinez Aytch, | **2:15-cv-00958-JAD-PAL** |
| Plaintiff | **Order Granting Motion for Summary Judgment and Resolving All Other Pending Motions** |
| v. | |
| Renee Baker, et al., | [ECF Nos. 30, 31, 32, 36] |
| Defendants | |

Pro se Nevada state-prison inmate Martinez Aytch sues the Warden of Nevada's Ely State Prison (ESP), two correctional officers, and a classification caseworker for civil-rights violations that allegedly occurred while he was incarcerated at ESP. Defendants move to dismiss or for summary judgment on Aytch's claims, arguing that Aytch failed to properly exhaust all available prison remedies as the Prison Litigation Reform Act (PLRA) requires. Alternatively, they argue that Aytch's claims either fail as a matter of law or are unsupported by the record evidence. I grant defendants' motion for summary judgment, grant their motion for leave to file unredacted versions of Aytch's medical records under seal,[1] deny as moot defendants' dismissal motion[2] and Aytch's motion to extend the prison copywork limit,[3] and close this case.[4]

**Background**

Aytch sues four defendants for events that allegedly occurred while he was incarcerated at ESP. He sues: Warden Renee Baker, Correctional Officers (COs) Debra Boone-Sharp and Edward

---

[1] ECF No. 31.

[2] ECF No. 32.

[3] ECF No. 30.

[4] I find this matter suitable for disposition without oral argument. L.R. 78-1.

Isenbergh, and caseworker Leslie Healer.[5]  He asserts four counts and seeks declaratory judgment, injunctive relief, and monetary damages.[6]

Aytch alleges that on March 26, 2015, he was admitted to the ESP infirmary for high blood pressure.[7]  He claims that he asked CO Boone-Sharp to retrieve his Quaran and Kufi (prayer cap) from his personal property; she told Aytch that he would need to submit a request to the unit caseworker.[8]  Aytch submitted the request that evening, but caseworker Healer denied it.[9]

The next day, Aytch asked C.O. Boone-Sharp for an informal grievance, and Boone-Sharp told him that there were none.[10]  Grievances are normally passed out at 8:00 p.m., and Aytch requested the grievance at 8:15.[11]  Aytch claims that he asked C.O. Isenbergh for an informal grievance on three separate, unspecified occasions but Isenbergh refused.[12]  This prevented him from filing grievances for the denial of his religious materials.[13]  Aytch submitted a second request for his religious items and legal materials on April 3, 2015, but that request, too, was denied.[14]  Aytch alleges that Christian and Jewish inmates housed in the infirmary were allowed to have their religious materials, but he was not.[15]

---

[5] ECF No. 18 at 2.

[6] *Id.* at 15.

[7] *Id.* at 8.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 7.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* 8–9.

[15] *Id.* at 10.

Aytch alleges that for the eleven days he was housed in the infirmary, he was locked in an isolation cell and not allowed indoor or outdoor exercise.[16]  The lack of exercise worsened Aytch's chronic back and knee problems.[17]  Additionally, Aych alleges that he was denied a change of underclothes during this period despite making repeated requests to Caseworker Healer for a change of underclothes.[18]  Aytch claims that Warden Baker has implemented an unconstitutional policy of depriving inmates housed in the infirmary of indoor and outdoor exercise.[19]  Aytch asserts claims for denial of access to the courts, free-exercise violations, equal-protection violations, and a claim for unconstitutional conditions of confinement.

Defendants move for summary judgment, arguing that Aytch failed to properly exhaust all prison administrative remedies as required by the PLRA and he has not shown that exhaustion is excused.  Alternatively, defendants argue that Aytch lacks evidence of actual injury to support his denial-of-access claim, that his free-exercise and equal-protection claims—which are premised on the prison's alleged loss or destruction of Aytch's religious materials while he was housed in the infirmary—fail as a matter of law because Aytch had an adequate post-deprivation remedy under state law, and that the conditions Aytch was subjected to while in the infirmary—where he was in fact allowed outdoor yard time—were constitutional.

### Discussion

**A.    Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[20]  When considering summary judgment, the court views all facts and draws all inferences in

---

[16] *Id.* at 11.

[17] *Id.* at 18.

[18] *Id.*

[19] *Id.* at 12.

[20] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

the light most favorable to the nonmoving party.[21]  If reasonable minds could differ on the material

facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the

facts are undisputed and the case must proceed to the trier of fact.[22]

    If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of

material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

showing that there is a genuine issue as to the material facts"; it "must produce specific evidence,

through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary

basis on which a reasonable fact finder could find in its favor.[23]  The court may only consider facts

that could be presented in an admissible form at trial in deciding a motion for summary judgment.[24]

Summary judgment may not be granted by default.[25]

**B.    Exhaustion under the PLRA**

    ***1.    Prisoner plaintiffs must fully exhaust the grievance process before filing suit.***

    The PLRA requires inmates to exhaust all available administrative remedies before filing

"any suit challenging prison conditions."[26]  Failure to properly exhaust all available administrative

remedies as required by the PLRA is "an affirmative defense the defendant must plead and prove."[27]

Once a defendant proves that there was an available administrative remedy that the inmate did not

exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is

something in his particular case that made the existing and generally available administrative

---

[21] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[22] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[23] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[24] FED. R. CIV. P. 56(c).

[25] *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 949–50 (9th Cir. 1993).

[26] 42 U.S.C. § 1997e(a).

[27] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

remedies effectively unavailable to him."[28]  Nonetheless, the ultimate burden of proof remains with

the defendant.[29]  The question of exhaustion is typically disposed of on summary judgment, with the

judge deciding disputed factual issues relevant to exhaustion.[30]  If feasible, exhaustion should be

decided before reaching the merits of a prisoner's claims.[31]

In *Woodford v. Ngo,* the United States Supreme Court held that the PLRA's exhaustion

requirement requires *proper* exhaustion.[32]  Proper exhaustion means that the inmate must comply

with the prison's "deadlines and other critical procedural rules"[33] and properly use "all steps that the

[prison] holds out," so that the prison is given an opportunity to address the issues on the merits.[34]

Recently, in *Ross v. Blake,* the United States Supreme Court reiterated that the PLRA's proper

exhaustion requirement is mandatory: exhaustion is only excused if administrative procedures are

effectively unavailable to the inmate.[35]

### 2. Defendants have shown that Aytch failed to exhaust all available administrative remedies before filing suit, and Aytch fails to shift the burden back to defendants.

The NDOC has a three-level grievance process.[36]  An inmate begins this process by filing an

informal grievance.  An inmate can appeal the prison's response to his informal grievance by filing a

first-level grievance.  To exhaust, the inmate must also appeal the prison's first-level response by

---

[28] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

[29] *Id.*

[30] *Id.* at 1170–71.

[31] *Id.*, 747 F.3d at 1170.

[32] *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added).

[33] *Id.* at 91.

[34] *Id.* at 90–91 (internal citation and quotation omitted).

[35] *Ross v. Blake*, 136 S.Ct. 1850 (2016) (holding that a court may not excuse an inmate's failure to exhaust administrative remedies before bringing suit under the PLRA, even to take "special" circumstances into account).

[36] AR 740.

filing a second-level grievance.[37]

Defendants' records show that Aytch submitted only one grievance action relating to the allegations in this case, grievance number 2006-29-9964.[38]  Aytch submitted the informal grievance on April 16, 2015.  In the grievance, Aytch states that on Mach 26, 2015, he was admitted into the prison infirmary and ordered to change into a jumpsuit and out of the clothes that he was wearing, which included blue jean pants, a blue shirt, a jacket, a personal velcro belt, and his prayer cap.[39] When he was released from the infirmary and retrieved his personal property, his prayer cap and belt were missing.[40]  Aytch requested to be reimbursed for these lost items.[41]

The prison rejected the grievance, indicating that when Aytch's personal property was returned he "did not mention any lost items" and "signed the inventory sheet showing" that he had received everything.[42]  Aytch then filed a first-level grievance complaining that the grievance responder failed to properly investigate the grievance and that the infirmary and C.O. Boone-Sharp lost his belt and cap.[43]  The prison also rejected the first-level grievance, responding that the purportedly lost items "were signed for."[44]

First, Aytch did not exhaust this grievance because he did not file a second-level grievance. Even if Aytch had fully exhausted his lost-property claim, he never grieved the allegations in this case: that he was denied access to the courts, that his free-exercise and equal-protection rights were violated, and that he was subjected to unconstitutional conditions of confinement while in the

---

[37] AR 740.04, 740.05, 740.06, 740.07.

[38] ECF No. 38-10.

[39] *Id.* at 6–7.

[40] *Id.* at 7.

[41] *Id.*

[42] *Id.* at 5.

[43] *Id.* at 4.

[44] *Id.* at 3.

infirmary because he was denied a clean change of underclothes and exercise.  Because defendants have shown that there were available prison administrative remedies that Aytch did not take advantage of, the burden shifts to Aytch "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."[45]

Aytch responds that the allegations in his complaint that COs Boon-Sharp and Isenbergh denied his grievance requests establish that the prison's administrative grievance process was effectively unavailable to him, excusing his failure to exhaust his claims.[46]  I find that Aytch's conclusory statements—that C.O. Boon-Sharp denied his request for a grievance on March 27, 2015, and that Isenbergh denied three requests for grievances on three separate and unspecified occasions—are not sufficient to create a triable issue about exhaustion, particularly in light of Aytch's ability to file a grievance complaining about the purported loss of his prayer cap just two-and-a-half weeks later.  Aytch makes no effort to explain why he could not have simply included the rest of the allegations relating to his infirmary stay in that grievance.  I thus find that defendants are entitled to summary judgment for lack of exhaustion, and I therefore decline to reach defendants' other arguments.

---

[45] *Baca*, 747 F.3d at 1172.

[46] ECF No. 40 at 2–3.

1

**Conclusion**

2          Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgement

3     **[ECF No. 36] is GRANTED.**

4          IT IS FURTHER ORDERED that defendants' motion to dismiss **[ECF No. 32]** and Aytch's

5     motion to extend prison copywork limit **[ECF No. 31]** are **DENIED as moot.**

6          IT IS FURTHER ORDERED that defendants' motion for leave to file unredacted versions of

7     Aytch's medical records under seal **[ECF No. 31] is GRANTED**.  **The exhibits at ECF No. 33 will**

8     **remain under seal.**

9          IT IS FURTHER ORDERED that the Clerk is directed to **ENTER JUDGMENT** for

10    defendants and against Aytch and **CLOSE THIS CASE**.

11         Dated this 31st day of March, 2017.      _____

12                                                  Jennifer A. Dorsey
                                                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28